In re METHYL TERTIARY BUTYL
ETHER ("MTBE") PRODUCTS
LIABILITY LITIGATION.

This document relates to:

County of Suffolk and Suffolk County
Water Authority v. Amerada Hess
Corp., et al., 04 Civ. 5424.

Master File No. 1:00–1898.
MDL No. 1358 (SAS).
No. M21–88.

United States District Court,
S.D. New York.

Sept. 17, 2007.

Robin Greenwald, Robert Gordon, Esq., Weitz & Luxenberg, P.C., New York, NY, for Plaintiffs and Counsel for Suffolk County Plaintiffs.

Scott Summy, Carla Burke, Baron & Budd, P.C., Dallas, TX, Samuel Issacharoff, New York, NY, for Suffolk County Plaintiffs.

Peter John Sacripanti, James A. Pardo, Stephen J. Riccardulli, McDermott Will & Emery LLP, Sheila L. Birnbaum, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendants and Counsel for Defendant ExxonMobil.

Nathan P. Eimer, Pamela R. Hanebutt, Lisa S. Meyer, Eimer Stahl Klevorn & Solberg LLP, Chicago, IL, Samuel J. Abate, Jr., Pepper Hamilton, LLP, New York, NY, for CITGO Petroleum Corporation, CITGO Refining and Chemicals Company, LP, and PDV Midwest Refining, LLC.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

*[B]ecause "law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities."*[1]

Following the May 2007 decision of the United States Court of Appeals for the Second Circuit in *People of the State of California v. Atlantic Richfield Company, et al.* and *The State of New Hampshire v. Amerada Hess Corporation, et al.,*[2] defendants in the above-captioned distinct but related action ("the *Suffolk County* action"), having removed this case to federal court in 2004, now move to remand the

---

**1.** *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 837, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (quoting *Newman–Green, Inc. v. Alfonzo–Larrain,* 854 F.2d 916, 925 (7th Cir. 1988) (Posner, J.)).

**2.** *See In re MTBE Prods. Liab. Litig. ("In re MTBE"),* 488 F.3d 112 (2d Cir.2007).

action to state court based on lack of federal jurisdiction. Plaintiffs oppose the motion. This Court has received extensive submissions on the issue and has heard argument by learned counsel. For the reasons fully discussed below, the motion to remand is DENIED.

## I. BACKGROUND

### A. Procedural Posture

"Tortured" is an understated description of the procedural history of this case. On May 6, 2002, the case was originally filed in the United States District Court for the Eastern District of New York based on diversity and bankruptcy jurisdiction.[3] Apparently, thinking better of their decision to proceed in federal court, the plaintiffs filed another action in the New York State Supreme Court for Suffolk County on October 9, 2002. On March 22, 2004, after defendants' time for removal had expired,[4] one of the many defendants in the action, Lyondell Chemical Company, served a third-party complaint on Marathon Ashland Petroleum, LLC. Eight days later, on March 30, 2004, Marathon removed the case to the United States District Court for the Eastern District of New York.[5] The removal was based solely on federal officer jurisdiction under 28 U.S.C. § 1442(a).

Promptly after this removal, plaintiffs moved to remand the action to state court. Defendants vigorously opposed that remand motion arguing that this Court had federal jurisdiction and that no abstention with respect to the state law claims was warranted. This Court agreed, and denied plaintiffs' 2004 motion to remand.[6] The *Suffolk County* action was designated long ago as one of four focus actions.[7] As a result, this Court has presided over this action and given it top priority within the MDL for more than three years. During that time, it has issued thirty-six substantive opinions and orders, comprising more than one thousand pages of text; has issued thirty Case Management Orders; and has held over thirty-five status conferences.[8] Perhaps most importantly, a firm trial date has been set for March 3, 2008.[9]

In October 2006, after receiving leave to amend, plaintiffs filed a Sixth Amended

---

**3.** *See* 28 U.S.C. §§ 1332, 1334.

**4.** *See* 28 U.S.C. § 1446(b).

**5.** By order of the Judicial Panel on Multidistrict Litigation, this action was transferred to this Court on June 16, 2004 as part of multidistrict litigation ("MDL") No. 1358. The MDL is discussed *infra* Part I.C.

**6.** *See In re MTBE*, 341 F.Supp.2d 351 (S.D.N.Y.2004) (denying plaintiffs' motion to remand in the *Suffolk County* action).

**7.** *See* Case Management Order No. 4, dated October 19, 2004, at 2.

**8.** Many of the motions that have been decided resolved disputed issues of state law, including statutes of limitations for various state law claims, *see In re MTBE Products Liability Litigation*, Nos. 00 Civ. 1898, MDL 1358, M21–88, 2007 WL 1601491 (S.D.N.Y. June 4, 2007), whether plaintiffs may seek punitive damages, *see In re MTBE Products Liability Litigation*, Nos. 00 Civ. 1898, MDL 1358, M21–88, 2007 WL 2398805 (S.D.N.Y. Aug.16, 2007), plaintiffs' standing to pursue various claims and remedies, *see, e.g., In re MTBE*, 447 F.Supp.2d 289 (S.D.N.Y.2006) (permitting market share liability theory under New York law), *In re MTBE*, 379 F.Supp.2d 348 (S.D.N.Y.2005) (allowing New York plaintiffs to pursue concert of action theory), and whether the claims are preempted by federal law, *see In re MTBE*, 341 F.Supp.2d 386 (S.D.N.Y.2004).

**9.** *See* Case Management Order No. 22, dated November 16, 2006, at 2 (initially scheduling *Suffolk County* trial for January 2008). *But see* Transcript of May 16, 2007 telephone conference at 3 (setting March 3, 2008 as firm trial date). The parties and the Court expect

Complaint,[10] adding a federal claim against some, but not all, of the defendants in this action, pursuant to the Toxic Substances Control Act ("TSCA").[11] This Act provides that all claims under the Act *must* be brought in federal court.[12] There is no question that this Court has jurisdiction to hear the TSCA claim.[13]

### B. The Parties and the Complaint

The *Suffolk County* action includes two plaintiffs: the County of Suffolk ("the County") and the Suffolk County Water Authority ("SCWA").[14] Plaintiffs' Sixth Amended Complaint, filed in October 2006, names fifty-three defendants and asserts these nine claims:

> (a) violation of Section 8(e) of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2607(e); (b) public nuisance; (c) strict liability for design defect; (d) strict liability for failure to warn; (e) negligence; (f) private nuisance; (g) violation of New York's General Business Law; (h) violation of New York's Navigation Law; and (i) trespass.[15]

With the exception of the TSCA claim, each claim is asserted against each of the fifty-three named defendants.[16]

### C. Multi–District Litigation Number 1358

In order to fully understand the complexity of this motion, the *Suffolk County* action must be viewed in the context of this multi-district litigation ("MDL") proceeding. The current iteration of this MDL began in 2004, with defendants' removal of a number of actions that had been filed in state courts. There are now well over one hundred actions assigned to this Court, each having been transferred here for consolidated pretrial proceedings from district courts in nineteen states. Every action in the MDL asserts claims arising from one or more defendants' production, distribution, handling, or sale of MTBE-containing gasoline that is alleged to have contaminated plaintiffs' groundwater. Most of these actions were removed from state courts by defendants under some combination of: federal officer jurisdiction,

the March 2008 trial to last about three months.

**10.** *See* Case Management Order No. 20, dated August 25, 2006, ¶ 2 (granting leave to amend the *Suffolk County* complaint). Defendants did not oppose plaintiffs' request to amend. Moreover, defendants answered the amended complaint without moving to dismiss the TSCA claim.

**11.** *See* 15 U.S.C. § 2601 *et seq.* Plaintiffs' TSCA claim was brought specifically under 15 U.S.C. § 2607(e).

**12.** *See id.* § 2619(a) ("Any civil action under paragraph (1) *shall* be brought in the *United States district court* for the district in which the alleged violation occurred . . ." (emphasis added)).

**13.** *See* Transcript of August 23, 2007 status conference ("8/23/07 Tr.") at 76 (plaintiffs' counsel noting that even if the state claims were remanded, the parties "would still be here on some of our claims on the TSCA claims").

**14.** The County is a municipality located on Long Island in the State of New York. SCWA is a "public benefit corporation" that provides water to over 1.1 million Suffolk County residents, making it one of the largest groundwater suppliers in the nation. *Suffolk County* Sixth Amended Complaint ("6AC"), dated October 16, 2006, ¶ 8. The groundwater beneath Suffolk County is SCWA's sole source of drinking water. *See id.* ¶ 66.

**15.** *Id.* ¶ 4.

**16.** Plaintiffs' TSCA claim is brought against twelve defendants. *See id.* ¶¶ 3, 201–213 (naming the "TSCA defendants" and alleging TSCA violations). Defendants play down the TSCA claim, suggesting that because some of the twelve TSCA defendants are affiliated corporate entities, the claim is only against four "real" companies, a small number relative to the total line up of fifty-three defendants. But this argument ignores the fact that most of the non-TSCA defendants are affiliated with one or more other defendants, as well.

federal question jurisdiction based on federal preemption, the bankruptcy removal statute, and, most recently, the Energy Policy Act of 2005 ("EPA").[17] In addition, approximately thirty-five cases in the MDL have been filed in federal courts, asserting federal jurisdiction based on diversity of citizenship, TSCA or the EPA.

On October 19, 2004, the *Suffolk County* action, along with four other actions was designated a focus action within the MDL. In late 2006, *Suffolk County* was selected to be the first of the focus cases to be scheduled for trial.[18] As a result, it is now, and has been for some time, the most active case in the MDL and has demanded—and consumed—extensive judicial and party resources. For at least two years, the Court has held monthly status conferences, each lasting several hours, for which the parties prepare joint and separate agendas of issues arising in the MDL. Although the *Suffolk County* action is only one in over one hundred actions in the MDL, it is no exaggeration to say that the *Suffolk County* action consumes the majority of time at all of these conferences.

## II. JURISDICTIONAL AND PROCE-DURAL STATUTES

### A. Statutory Bases for Original Jurisdiction in Federal Court

A federal court may exercise jurisdiction only if Congress has passed a statute granting it such jurisdiction.[19] Generally, Congress has granted original jurisdiction to district courts in two situations. *First,* 28 U.S.C. § 1331 ("section 1331") grants district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"[20] so that plaintiffs might have a federal forum when they seek to vindicate a federal right.[21] Section 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

*Second,* Congress has granted district courts original jurisdiction in "diversity" actions under 28 U.S.C. § 1332 ("section 1332"). Such actions involve state law claims but are also "civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens."[22] The purpose of this statute is to provide a neutral forum in "important disputes where state courts might favor, or be perceived as favoring, home-state litigants."[23] Section 1332 states:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; (2) citizens of a State

---

**17.** *See* 28 U.S.C. § 1442(a) (federal officer); *id.* §§ 1441(a), 1331 (federal question, federal preemption); *id.* § 1334(b) (bankruptcy); Energy Policy Act of 2005, Pub.L. 109–58, tit. XV, § 1503, 119 Stat. 1076 (codified at 42 U.S.C. § 7545 note).

**18.** *See* Case Management Order No. 22, dated Nov. 16, 2006, at 2 (selecting *Suffolk County* as the first action to be tried).

**19.** *See* U.S. Const. art. III, § 2. *See also Exxon Mobil Corp. v. Allapattah Servs., Inc.* 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) ("The district courts of

the United States, as we have said many times, are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." (citation and quotation marks omitted)).

**20.** 28 U.S.C. § 1331.

**21.** *See Allapattah,* 545 U.S. at 552, 125 S.Ct. 2611.

**22.** *Id.*

**23.** *Id.* at 553–54, 125 S.Ct. 2611.

and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

## B. Statutory Bases for Removal and Remand

When a plaintiff files a complaint in state court that could have been filed originally in federal court, Congress allows the defendant or defendants to remove the action from state to federal court under 28 U.S.C. § 1441 ("section 1441") and 28 U.S.C. § 1446 ("section 1446"). Section 1441 sets forth the jurisdictional basis for removal, while section 1446 establishes the procedural requirements for removing the action to federal court. One such requirement is that all defendants must consent to a removal for it to be valid.[24]

The requirements for considering a motion to remand to state court are set forth in 28 U.S.C. § 1447 ("section 1447"). "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."[25]  However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[26]

The reason for section 1447(c)'s short and strict deadline is obvious: the court and parties have a substantial interest in resolving which court will decide the action before any court or the parties devote resources to the case, or the court resolves particular issues.[27]  As Congress explained in passing the statute, " '[s]o long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction, there is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuffling a case between two courts that each have subject matter jurisdiction.' "[28]

■■■ Creative lawyers are capable of manufacturing many reasons for remand at any time, particularly when a case takes years to litigate and state courts continue to develop the law in the interim.  However, section 1447(c) expressly distinguishes between remands for lack of subject mat-

---

24. *See In re MTBE*, 488 F.3d 112, 134 (2d Cir.2007).

25. 28 U.S.C. § 1447(c).

26. *Id.* Interestingly, were the state claims to be remanded now to state court, the "just costs and ... actual expenses, including attorney fees, incurred as a result of the removal" would be astronomical—amounting to hundreds of thousands, if not millions of dollars.

27. This thirty day requirement is not a mere technicality.  Rather, it reflects a policy choice on the part of Congress to promote certainty and efficiency among litigants and the courts at a very early stage in the proceedings and to guard against mid-litigation forum shopping. *See, e.g., Pierpoint v. Barnes*, 94 F.3d 813, 818 (2d Cir.1996) ("The purpose of the amendment [to 1447(c) to add the thirty day requirement] then, was to avoid late-game forum shopping by plaintiffs .... [I]t was the intent of Congress to create a strict time limitation on all challenges to removal based on any impropriety, whether procedural or substantive, in the removal procedure (excepting those based on the district court's lack of subject matter jurisdiction)."). *Accord In re Allstate Ins. Co.*, 8 F.3d 219, 223 (5th Cir.1993) (citing H.R.Rep. No. 889, 100th Cong., 2d Sess. 72 (1988), 1988 U.S.C.C.A.N. 5982, 6032–33).

28. *In re Allstate Ins. Co.*, 8 F.3d at 223 (quoting H.R.Rep. No. 889, 100th Cong., 2d Sess. 72 (1988)).

ter jurisdiction and remand for any other defect in removal. Because jurisdiction goes to the issue of the court's power, a motion to remand based on lack of subject matter jurisdiction may be made at any time. Either a court has the power to adjudicate a case or it does not. Indeed, a federal court has an independent duty to determine that it has subject matter jurisdiction and may raise the issue *sua sponte.*[29]

## III. ISSUES TO BE DECIDED

### A. Subject Matter Jurisdiction

A challenge to subject matter jurisdiction can be raised at any time during an action. Thus, the Court must consider whether it has subject matter jurisdiction in the *Suffolk County* action, based on the presence of a federal claim, despite defendants' improvident removal of the action.

### B. Supplemental Jurisdiction

If the Court has original subject matter jurisdiction over any claim, the next question is whether it may exercise supplemental jurisdiction over the state law claims as well as related parties. This question is governed by 28 U.S.C. § 1367, and the analysis has two parts. *First,* the Court must determine whether section 1367(a)'s requirement that the federal claim and the state law claims and related parties form part of the same "case or controversy" under Article III of the Constitution is satisfied. *Second,* if it is, the Court must then determine whether, in the exercise of its discretion, it should decline to exercise

supplemental jurisdiction based on the presence of any of the factors listed in section 1367(c).

## IV. DISCUSSION

### A. This Court Has Subject Matter Jurisdiction Over the *Suffolk County* Action

■ Defendants conceded at oral argument, as they had to, that if plaintiffs' 2006 Amended Complaint adding a federal claim was validly filed, then this Court has original jurisdiction over this action.[30] Succinctly stated, defendants argue that because their removal of this case from state court turned out to have been improvident—a result of the May 2007 opinion of the appellate court in a different case—this Court had no power to permit plaintiffs to amend their complaint in 2006 to add an unmistakable federal claim. Defendants' argument must be rejected.

The highly unusual facts of this case confront this Court with the following question: is remand necessary or appropriate where defendants remove an action to federal court, then seek to remand that same action to state court at a much later stage of litigation, after plaintiffs have added a jurisdiction-conferring federal claim and after removal is discovered to have been improvident? Despite sophisticated searches for similar cases, conducted by teams of lawyers for both sides and by this Court, this case appears to be *sui*

---

**29.** *See* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). *Accord Kontrick v. Ryan,* 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004).

**30.** *See* 8/23/07 Tr. at 11, 17 (defense counsel conceding that if plaintiffs' amendment was effective, this Court currently has original jurisdiction over the *Suffolk County* action). That, of course, was not a concession that the Court has the power, *see* 28 U.S.C. § 1367(a), or should exercise its discretion, *see* 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the state law claims.

*generis.*[31] Indeed, no district court has been required to assess whether it could exercise jurisdiction based on a challenge made after it permitted an amendment to add a federal claim but later learned that the original basis of jurisdiction was defective.[32] As a result, the Court cannot rely on a single controlling case or statute; rather, it must look to general principles drawn from the case law for guidance.

While the general rule is that subject matter jurisdiction is assessed at the time a complaint is filed, or at the time of removal to federal court when a case is originally filed in state court,[33] a number of exceptions have been recognized by the courts. One such exception is found in Rule 21 of the Federal Rules of Civil Procedure, permitting the court, on motion or *sua sponte*, to order that a party be "dropped or added ... at any stage of the action and on such terms as are just." Another exception is statutory: 28 U.S.C. § 1653 states that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

Finally, a judge-made exception allows an appellate court to find that a district court properly exercised jurisdiction based on a jurisdiction-curing event that occurred after filing, but before the entry of final judgment.[34] Given a recent Supreme Court decision discussed *infra*, it is not clear that this last exception is limited to actions by appellate courts.[35] A restatement of this last exception may be that if a

---

31. All of the district courts that denied leave to permit an amendment to create jurisdiction had already dismissed (or decided to dismiss) the case based on lack of jurisdiction. When district courts permitted an amendment of a complaint to add a federal claim for the purpose of solidifying jurisdiction, they acted at a time when they believed they had jurisdiction.

32. This is because in every case where a district court permitted an amendment to a complaint, the general rule preventing interlocutory appeals meant that no challenge to jurisdiction was made until the case was appealed after a final judgment. Due to the fortuity of an appellate decision in a related action, this is the one case in a million in which the district court must confront that issue.

33. *See, e.g., Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939); *Vera v. Saks & Co.,* 335 F.3d 109, 116 n. 2 (2d Cir.2003). *See also* 14C Wright, Miller & Cooper, *Federal Practice and Procedure* § 3739, at 468 (3d ed. 1998) ("[W]hether an action should be remanded to state court must be resolved by the district court with reference to the complaint, the notice of removal, and the state court record at the time the notice of removal was filed.").

34. *See Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972) (holding that a jurisdictional defect at the time of removal need not disturb a final judgment on appeal).

35. *See* discussion of *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004), *infra* Part IV. A.3.a. Nor is it so clear that the moment of final judgment is determinative. In *Grupo Dataflux,* the Fifth Circuit had held that where a jurisdictional error was not identified until after a jury's verdict and the post-filing change cured the defect before it was identified, the district court had jurisdiction. The Supreme Court, however, noted that "an approach to jurisdiction that focuses on efficiency and judicial economy cannot possibly be held to the line drawn by the Court of Appeals." *Id.* at 577, 124 S.Ct. 1920. The Court went on to quote with approval the dissent from the Fifth Circuit's opinion:

> [T]here is no difference in efficiency terms between the jury verdict and, for example, the moment at which the jury retires. Nor, for that matter, is there a large difference between the verdict and mid-way through the trial.... Indeed, in complicated cases requiring a great deal of discovery, the parties and the court often expend tremendous resources long before the case goes to trial.

*Id.* (quoting *Atlas Global Group, L.P. v. Grupo Dataflux,* 312 F.3d 168, 177 (5th Cir.2002) (Garza, J., dissenting)).

jurisdictional defect is cured prior to final judgment (*e.g.*, by the district court's exercise of its power under Rule 21 or by granting leave to amend a complaint), the appellate court will only ask, upon any review of a verdict, whether the district court had jurisdiction by the time of final judgment.

Neither the Rule 21 nor the section 1653 exception applies to this case. The third exception, by contrast, is at the heart of this motion. In applying this exception, courts have looked to certain criteria to determine whether a jurisdictional defect is curable.[36] At one end of the spectrum is a particular defect that is simply not curable, such as a change in the make-up of a continuing party in a diversity.[37] At the

other end of the spectrum is a defect that can always be cured, such as a defective allegation of jurisdiction.[38] In between, courts give careful consideration to the concepts of finality, efficiency and economy in determining whether a jurisdictional defect is curable.

Courts have distinguished between a post-filing change intended to deprive the court of jurisdiction and a post-filing change intended to solidify the court's jurisdiction.[39] Some courts have also considered concepts of estoppel and waiver, finding that a party that took action to remain in federal court should not be heard to complain about the original lack of jurisdiction after events have caused it to regret its earlier decision.[40] Another factor

**36.** The *Grupo Dataflux* Court focused on whether a jurisdictional-defect is curable or not curable, rather than on which court has the power to effect a cure.

**37.** *See id.* at 576, 124 S.Ct. 1920 (stating that "postfiling citizenship change is irrelevant" and holding that jurisdiction is incurable).

**38.** *See* 28 U.S.C. § 1653 (permitting cures for defective jurisdictional allegations). *See also, e.g., Newman–Green,* 490 U.S. at 826, 109 S.Ct. 2218.

**39.** *See, e.g., Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000) ("Although normally jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments, that rule applies mainly in cases where the amended complaint attempts to destroy federal jurisdiction after the case has been properly removed. In this case, where the amended complaint solidified rather than destroyed federal jurisdiction ... because the [newly-added] ADA claim raised a federal question, subject matter jurisdiction existed at the time the district court entered judgement. Therefore, this case was properly in federal court." (quotations omitted)).

**40.** Whether courts have found estoppel or waiver depends in large part on whether the post-filing or post-removal change was under-

taken "voluntarily" or "involuntarily." *See, e.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 929 (8th Cir.2005), *infra* Part IV.A.2.d; *In re Atlas Van Lines, Inc.,* 209 F.3d 1064, 1065–66 (8th Cir.2000) (because plaintiff's choice once the cases was removed on the basis of federal preemption was to amend or be dismissed, the amendment to add a federal claim was involuntary and "requires us to treat her amended complaint as if it had never been filed. Hence, only the original complaint governs the question of federal jurisdiction in this case."); *Kidd v. Southwest Airlines, Co.,* 891 F.2d 540, 546–47 (5th Cir.1990), *infra* Part IV.A.2.d; *Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 185 (7th Cir.1984) (although plaintiff's initial complaint was not removable, jurisdiction was conferred by plaintiff's decision to "throw in the towel" and amend his complaint to state an "unmistakable federal cause of action[:]" "[W]here, after objecting to removal, the plaintiff voluntarily amends the original complaint to allege a federal cause of action, the plaintiff will have waived the ability to challenge removal jurisdiction"); *Brough v. United Steelworkers of Am.,* 437 F.2d 748, 750 (1st Cir.1971), *infra* Part IV. A.2.d. *See also Fax Telecommunicaciones, Inc. v. AT & T,* 138 F.3d 479, 488 (2d Cir.1998) (although plaintiff made no amendment after the improper removal, the appellate court held that where the plaintiff raised no objection to removal in the district court, and the

is whether the court had identified the defect in jurisdiction at the time the post-filing change was effected.[41] Finally, many courts have made reference to the stage of the proceedings—noting whether remand was sought early in the action (when few judicial resources had been expended), or late in the action (after the court had expended significant judicial resources).[42] Applying all of these criteria to this case, there is little question that plaintiffs' voluntary amendment adding a federal claim that solidified jurisdiction at a time before the defect was identified and after the Court had expended significant judicial resources, was proper and has conferred federal jurisdiction on this Court despite the lack of jurisdiction at the time of removal.

Plaintiffs cite many cases where a court was permitted to exercise jurisdiction based on post-removal (or post-filing events) despite a lack of jurisdiction at the time of removal (or filing).[43] Defendants, in turn, cite cases where a court declined to exercise jurisdiction based on subsequent events.[44] Resolving this apparent inconsistency requires a close reading of the factual and procedural contexts in which each decision was made. This is so because in each case, as discussed above, the court engages in a multi-factor analysis that depends on the circumstances of that particular case.

With this background of the factors considered by courts in determining whether a post-filing event permitted the trial court

to exercise jurisdiction, I will now undertake a review of significant cases selected either because they are Supreme Court decisions or because they are usefully analogous (albeit not identical) to the factual and procedural context confronting this Court.

### 1. Supreme Court Cases

The following two Supreme Court cases both address jurisdiction based on diversity of citizenship and the application of Rule 21 and/or section 1653, which, as mentioned above, are not at issue here. Nevertheless, both cases stand for the broader and more critical proposition that it is permissible for a court to allow an amendment at a time when it has no jurisdiction over the action.

#### a. *Newman–Green, Inc. v. Alfonzo–Larrain*

In *Newman–Green, Inc. v. Alfonzo–Larrain*, the Supreme Court heard an appeal from a Seventh Circuit decision dismissing a lawsuit based on lack of subject matter jurisdiction. The Supreme Court reversed, holding that in order to salvage jurisdiction, the appellate court had the power to grant plaintiffs motion to dismiss a dispensable non-diverse party that solidified rather than destroyed the court's jurisdiction. Even though the court lacked subject matter jurisdiction over the action at the time the motion was granted, once the motion was granted, the court had

---

counterclaims provided a sufficient basis for subject matter jurisdiction, the court would not disturb the district court's judgment).

41. *See, e.g.,* cases cited *infra* note 89.

42. *See, e.g., Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 76, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996); *Newman–Green,* 490 U.S. at 836, 109 S.Ct. 2218. *See also* cases cited *infra* note 90.

43. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Remand *Suffolk County Water Authority* to State Court at 5–9.

44. *See* Memorandum in Support of Defendants' Motion to Remand ("Def. Mem.") at 9–12; Reply Memorandum in Support of Defendants' Motion to Remand ("Def. Reply Mem.") at 2–3.

subject matter jurisdiction based on diversity of citizenship.

The *Newman–Green* action was originally filed in federal court based on 28 U.S.C. § 1332(a)(3), which confers jurisdiction on the federal court when a citizen of one State sues both aliens and citizens of a state (or states) different from that of the plaintiff. It became clear that one of the defendants was stateless and therefore not considered to be a citizen of a state different from that of the plaintiff.[45] This defect was not noticed until after the trial court had granted partial summary judgment in favor of plaintiff and partial summary judgment in favor of the four individual defendants (guarantors of royalty payments under a licensing agreement) and plaintiff had filed an appeal. The appellate court invited plaintiff to move to amend the complaint to drop the non-diverse defendant. Plaintiff so moved, and the appellate court granted the motion pursuant to both 28 U.S.C. § 1653 and Rule 21 of the Federal Rules of Civil Procedure.[46] It then addressed the merits of the appeal, affirming in large part and remanding to the trial court to fix damages and "resolve certain minor issues."[47]

What happened next in *Newman–Green* is quite interesting given the *Suffolk County* defendants' argument here that this Court lacked the power to permit an amendment of the complaint at a time it lacked jurisdiction over the action. In *Newman–Green*, the individual defendants-guarantors sought rehearing en banc. The majority of the en banc court held that the appellate court lacked power to grant the motion under either section 1653 or Rule 21 but *"remanded the case to the District Court for it to determine* whether it would be prudent to drop [the non-diverse defendant] from the litigation."[48] In taking this action, the en banc court never questioned or doubted the trial court's power to grant a motion for leave to amend at a time when it was clear that it lacked jurisdiction over the action.

The Supreme Court then reversed the en banc decision and held that the appellate court had the power to grant the motion for leave to amend. The Court first found that the motion could not be granted pursuant to section 1653 as that statute is limited to amending "defective allegations of jurisdiction."[49] In *Newman–Green*, the allegations of jurisdiction were not defective—the individual defendant was in fact a United States citizen and was not a citizen of a state different from that of the plaintiff. The Court also

---

**45.** 28 U.S.C. § 1332(a)(2) was not available because it only applies when a citizen sues exclusively aliens. In *Newman–Green*, one of the defendants was a United States citizen. *See Newman–Green*, 490 U.S. at 828, 109 S.Ct. 2218.

**46.** *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). *See also* Fed.R.Civ.P. 21 ("Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.").

**47.** *Newman–Green*, 490 U.S. at 829, 109 S.Ct. 2218 (discussing the Seventh Circuit decision). The procedural posture reveals that no final judgment had been entered at the time the appellate court granted the motion.

**48.** *Id.* at 830, 109 S.Ct. 2218 (emphasis added). The Federal Rules of Civil Procedure govern practice in the district courts but have no application in the appellate courts. *See* Fed.R.Civ.P. 1.

**49.** *Newman–Green*, 490 U.S. at 831–32, 109 S.Ct. 2218 (quoting 28 U.S.C. § 1653).

acknowledged that Rule 21 does not apply to the courts of appeals. The Court then framed the question as follows: "whether a court of appeals may do *what a district court can do* and dismiss a dispensable nondiverse party itself, or whether a court of appeals must remand the case to the district court, leaving it to the district court's discretion to dismiss the party."[50] The Court embraced the former course, permitting the appellate court to grant the motion.

After this detailed exposition of the history of *Newman–Green,* I stress three essential points. *First,* the Supreme Court never questioned the authority of either the trial court or the appellate court to grant a motion at a time when it lacked jurisdiction.[51] *Second,* there was no final judgment in *Newman–Green*—not at the time the appellate panel decided it could grant a motion for leave to amend nor at the time the Supreme Court determined that the appellate court could grant a motion for leave to amend. *Third,* if this Court lacked the power in 2006 to grant plaintiffs' motion for leave to amend, plaintiffs could have re-filed the action in federal court, asserting the federal TSCA claim, along with all of the state law claims, and then ask this Court to exercise supplemental jurisdiction over those claims.[52] Such a course would surely elevate form over substance, and would be a "hymn to intellectu-

al beauty" rather than a recognition of "practicalities."[53]

### b. *Caterpillar Inc. v. Lewis*

A subsequent Supreme Court case, *Caterpillar Inc. v. Lewis,*[54] built on the holding in *Newman–Green* and indeed applied it in the context of a case that was improvidently removed to federal court. Because the procedural details of the case are important to a full understanding of the holding in *Caterpillar,* I will describe them in some detail. Lewis (a citizen of Kentucky), who suffered personal injuries while operating a bulldozer, sued the manufacturer of the bulldozer (Caterpillar—a citizen of Delaware and Illinois) and the company that serviced it (Whayne Supply—a citizen of Kentucky) in state court. Liberty Mutual, the insurer for Lewis' employer, intervened as a party plaintiff asserting subrogation claims against both defendants. Next, Lewis settled his claim with Whayne Supply. Caterpillar then removed the case to federal court on the ground of diversity of citizenship.

Lewis moved to remand, arguing that Whayne Supply (the nondiverse defendant) remained in the action because Liberty Mutual had not settled its claim against this defendant. The district court denied the motion to remand, choosing to treat Whayne Supply as effectively dropped from the case prior to removal due to the

---

50. *Id.* at 832–33, 109 S.Ct. 2218 (emphasis added).

51. *Cf. Mullaney v. Anderson,* 342 U.S. 415, 417, 72 S.Ct. 428, 96 L.Ed. 458 (1952) (Supreme Court applied Rule 21 to grant plaintiff's motion to add two union members as parties in order to give plaintiff standing to proceed holding that to require the plaintiff to start over in the District Court "would entail needless waste and run[] counter to effective judicial administration").

52. *See Newman–Green,* 490 U.S. at 837, 109 S.Ct. 2218 ("If the entire suit were dismissed,

Newman–Green would simply refile in the District Court against the Venezuelan corporation and the four Venezuelans and submit the discovery materials already in hand. The case would then proceed to a preordained judgment. Newman–Green should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity." (citation and footnote omitted)).

53. *Newman–Green,* 854 F.2d at 925.

54. *See* 519 U.S. at 61, 117 S.Ct. 467.

settlement with Lewis. Almost three years later, Liberty Mutual, in fact, did settle its claim against Whayne Supply, and the district court dismissed Whayne Supply as a defendant. The case then proceeded to trial where Caterpillar prevailed. Next, Lewis appealed, arguing that the verdict must be vacated because the district court lacked jurisdiction at the time of removal. The Sixth Circuit agreed and vacated the judgment. The Supreme Court granted Caterpillar's petition to review the Sixth Circuit's decision.

The Supreme Court framed the question presented as follows: "Does the District Court's initial misjudgment [denying a timely motion to remand] still burden and run with the case, or is it overcome by the eventual dismissal of the nondiverse defendant?"[55] In reinstating the verdict and holding that the district court's initial misjudgment was overcome by later events, the Supreme Court established the propriety of the following actions. *First,* and foremost, the Court permitted an improvident removal to be cured by subsequent events. *Second,* the Supreme Court *vali-dated a district court order* dismissing a nondiverse defendant (as a result of a settlement), at a time when, in retrospect, that court lacked subject matter jurisdiction over the case. *Finally,* the Court based its decision, in part, on considerations of finality, efficiency and economy.[56] Quoting directly from its earlier decision in *Newman–Green,* the *Caterpillar* Court stated that " '[r]equiring dismissal after years of litigation' ... 'would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention.' "[57] The *Caterpillar* Court went on to say that this reasoning comports with a main theme of the removal scheme.

> Despite a federal trial court's threshold denial of a motion to remand, if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated. In this case, however, no jurisdictional defect lingered through judgment in the District Court. To wipe out the adjudication postjudgment, and return to state court a case now

---

**55.** *Id.* at 70, 117 S.Ct. 467. The Court noted two of its earlier decisions that had discussed challenges to jurisdiction arising from improper removal. In *American Fire & Casualty Co. v. Finn,* the Court held that because there was no diversity jurisdiction at the time of removal or at the time of judgment, the judgment must be vacated. *See* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In dicta, however, the *Finn* Court noted that if a trial court had jurisdiction at the time of a final judgment, a removing defendant would be estopped from challenging a final judgment based on a removal error. Interestingly, in *Finn,* the Supreme Court remanded the action to the district court to determine whether a new judgment could be entered on the original verdict if the nondiverse defendant were dismissed from the case. Following remand, the District Court granted the motion to dismiss but declined to reinstate the verdict, opting instead to hold a new trial. The Fifth Circuit set aside the judgment of the second trial and reinstated the original verdict. In a

second case, *Grubbs v. General Electric Credit Corp.,* the Supreme Court held that because there was jurisdiction at the time of final judgment, the judgment could stand despite the fact that the case had been improvidently removed. *See* 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972). The Court noted that no party had objected to the removal. It was for this reason that *Caterpillar* presented a new situation—where a party had objected to removal, the objection had been heard and denied and the case proceeded to verdict (by which time the trial court had jurisdiction).

**56.** Here, while there is as yet no finality, concerns of both economy and efficiency are present and unusually compelling. As for finality, see discussion of *Grupo Dataflux, infra* Part IV.A.3.a.

**57.** *Caterpillar,* 519 U.S. at 76, 117 S.Ct. 467 (quoting *Newman–Green,* 490 U.S. at 836, 109 S.Ct. 2218).

satisfying all federal jurisdictional requirements, would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice.[58]

### 2. Circuit Court Cases

No fewer than eight circuit courts have reached the same conclusion as the Supreme Court in *Newman–Green* and *Caterpillar*. Although one of these circuit court cases did not involve a removal, all of the courts approved a district court's having permitted an amendment despite not having jurisdiction at the time of such amendment.

### a. *Bernstein v. Lind–Waldock & Company*

In *Bernstein v. Lind–Waldock & Company*, plaintiff sued two defendants in state court seeking to enjoin the auction of his seat on the Chicago Mercantile Exchange.[59] Both defendants removed to federal court, claiming that plaintiffs rights were governed by federal law rather than state law. Plaintiff moved to remand, but the motion was denied. Thus, as in the instant case, the action remained in federal court although plaintiff had not pled a federal claim.

Plaintiff then amended the complaint to add a Constitutional claim: that the Exchange had taken his seat without due process of law. The district court granted summary judgment in favor of both defendants, except as to one "minor" count which was remanded to state court.[60] Plaintiff appealed. The appellate court began its analysis by questioning whether the case had been properly removed. It held that the removal was improper as the allegations of the complaint did not state a claim arising under federal law pursuant to 28 U.S.C. § 1331.[61] However, the appellate court went on to note that after remand was denied, plaintiff chose to file an amended complaint that included an "unmistakable" federal cause of action against one of the two defendants.[62] This claim brought the action within the original jurisdiction of the district court.[63] The appellate court then affirmed the grant of summary judgment to the Exchange.[64]

### b. *Barbara v. New York Stock Exchange*

In *Barbara v. New York Stock Exchange, Inc.*, the Second Circuit followed

---

58. *Id.* at 76–77, 117 S.Ct. 467 (citations omitted).

59. *See* 738 F.2d 179 (7th Cir.1984). After plaintiff's preliminary injunction motion was denied in state court and the seat was auctioned, the action then became one for restoration of the seat or in the alternative for damages.

60. *Id.* at 182.

61. *See id.* at 185. As in the instant case, the removal was based on a federal question, and the district court had failed to perceive the defect when deciding the motion to remand.

62. *Id.* In the instant case, plaintiffs also voluntarily amended their claim to bring an "unmistakable" federal claim against some, but not all, of the defendants. *Accord In re Wireless Tel.*, 396 F.3d at 929 (finding voluntary

amendment of complaint post-removal sufficient to confer jurisdiction).

63. As in the instant case, the "cure" of the jurisdictional defect occurred in the trial court, not in the appellate court. Thus, defendants' argument here that only an appellate court (but not a trial court) may implement a jurisdictional fix is plainly incorrect.

64. *See Bernstein*, 738 F.2d at 187–88. It is worth noting that the court never explained whether the amendment of the complaint was made as of right or by a grant of leave to amend. In any event, the appellate court never considered that the amendment might be void because the district court had lacked jurisdiction over the matter at the time of the amendment.

the reasoning of *Bernstein*.[65] Plaintiff brought an action in state court against the Stock Exchange alleging damages for wrongful termination. Defendant removed the action to federal court, asserting both federal question and federal officer jurisdiction. Defendant then moved to dismiss the case based on qualified immunity and plaintiff's failure to exhaust administrative remedies. Plaintiff cross-moved to file an amended complaint asserting federal claims.[66] The district court granted defendant's motion to dismiss, and denied plaintiff's cross-motion as moot in light of the court's decision to dismiss the case. Plaintiff appealed.

The Second Circuit began its analysis by determining that the case had been improperly removed. However, rather than vacating and remanding based on the lack of federal jurisdiction *ab initio*, it held that the plaintiff's proposed amendment should have been permitted and, in fact, conferred jurisdiction over the action. Having thereby determined that the district court had jurisdiction to hear the case, the appellate court agreed with the district court and affirmed the summary judgment for defendant.

Unlike courts in the cases cited earlier, the *Barbara* court was not asked to grant a motion at a time when it lacked jurisdiction. Barbara's amendment was "as of right" because the defendant had not yet filed an answer.[67] Nonetheless, the court stressed the "voluntariness" of plaintiff's

action stating that "if a district court erroneously exercises removal jurisdiction over an action, and the plaintiff *voluntarily* amends the complaint to allege federal claims, we will not remand for want of jurisdiction."[68]

While there are distinctions between *Barbara* and the instant case, the plain fact here is that plaintiffs have voluntarily added an "unmistakable" federal claim prior to the entry of final judgment.[69] Thus, at the time this case reaches an appellate court, it will be beyond cavil that the trial court had original jurisdiction to hear the case based on plaintiffs' addition of a federal claim.

### c. *Balgowan v. State of New Jersey, Department of Transportation*

In *Balgowan v. State of New Jersey*, Department of Transportation, engineers sued their employer, the State of New Jersey Department of Transportation (the "State"), in federal court, alleging violations of the Fair Tabor Standards Act and seeking monetary damages.[70] The district court granted summary judgment to the State and plaintiffs appealed. The Third Circuit Court of Appeals affirmed in part, reversed in part, and remanded with instructions to enter summary judgment in favor of plaintiffs on their back-pay for overtime claim. Before judgment was entered, the Supreme Court issued a decision which "abruptly changed the law regarding Eleventh Amendment immunity."[71] Relying on *Seminole Tribe of Florida v.*

---

65. *See* 99 F.3d 49 (2d Cir.1996).

66. *See id.* at 49 (citing Fed.R.Civ.P. 15(a)).

67. *See id.* at 56 (citing Fed.R.Civ.P. 15(a)).

68. *Id.* (emphasis added) (citing *Bernstein*, 738 F.2d at 185). *Cf. Kelly v. Carr*, 691 F.2d 800, 805–06 (6th Cir.1980) (holding that after improvident removal, court's grant of motion to intervene allowed court to exercise jurisdic-

tion over the action where federal jurisdiction would otherwise have been absent).

69. *See* discussion of *Grupo Dataflux*, *infra* Part IV.A.3.a.

70. *See* 115 F.3d 214 (3d Cir.1997).

71. *Id.* at 216 (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)).

*Florida*, the State immediately filed for rehearing. The State argued that the appellate court lacked jurisdiction to hear the suit because the State was now immune from a suit for damages based on the Eleventh Amendment. Plaintiffs, in turn, moved to amend their complaint in order to add the Department Commissioner as a defendant and to include a claim for prospective declaratory and injunctive relief. The State objected to the motion.

Citing *Newman–Green*, the Third Circuit held that it could rely on Rule 21 to grant the motion to amend and thereby allow plaintiffs to add a party and amend their request for relief, all in an effort to solidify rather than destroy jurisdiction. Despite the fact that a newly announced Supreme Court decision has retroactive effect,[72] which means that neither the district court nor the appellate court ever had jurisdiction over the case prior to the amendment, the appellate court granted the motion, thereby salvaging federal jurisdiction. In doing so, the court noted that " 'requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention.' "[73]

Once again, the court never hesitated to act to salvage jurisdiction despite the fact that at the time the motion was made it turned out (retrospectively) that the court lacked jurisdiction. Thus, it accepted the proposition that practicalities can and should override "intellectual beauty" based on the notion of protecting limited judicial resources and efficiency toward all parties. Nor can this case be shoehorned into a so-called "final judgment" exception.[74] At the time the jurisdictional defect arose—as a result of the recent Supreme Court decision in *Seminole*—the case was far from final judgment. Indeed, in its first decision, the circuit court had remanded the matter to the district court to enter judgment in favor of plaintiffs on some, but not all of their claims. On defendant's motion for a rehearing, the Third Circuit granted plaintiffs' motion to amend, thereby salvaging its own jurisdiction to act. The circuit court *then* reversed its earlier holding, based on yet another intervening Supreme Court opinion, and granted summary judgment to all defendants.

#### d. *Additional Circuit Court Decisions*

The remaining five circuit courts all approved an amendment by plaintiffs, adding a federal claim prior to verdict, as sufficient to cure a jurisdictional defect that existed at the time of removal. Specifically, the First, Fifth, Eighth, Ninth and Tenth Circuits have each held that an amended complaint, filed after an improper removal, that adds a claim arising under federal law is sufficient to confer subject matter jurisdiction on the district court.[75]

---

**72.** *See* August 31, 2007 Letter from Peter Sacripanti, liaison counsel for defendants, to the Court (citing *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 543, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991); and *Welch v. Cadre Capital*, 946 F.2d 185, 186 (2d Cir. 1991)).

**73.** *Balgowan*, 115 F.3d at 217 (quoting *Newman–Green*, 490 U.S. at 836, 109 S.Ct. 2218 (citing *Mullaney*, 342 U.S. at 417, 72 S.Ct. 428)).

**74.** *See* Def. Mem. at 5–7; *see also* Def. Reply Mem. at 4–5.

**75.** *See In re Wireless Tel.*, 396 F.3d at 922 (where one set of plaintiffs amended their complaint to add a federal claim after removal on preemption grounds, but before the court had ruled on whether preemption removal was appropriate, the court viewed this as a "voluntary" amendment and held that courts must "resolve questions of subject matter jurisdiction by examining the face of the amended complaint"); *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242 (10th Cir.

Defendants have argued that these cases are distinguishable because the party invoking federal jurisdiction waived its right to challenge that jurisdiction by adding a federal claim, thereby seeking to remain in federal court. To the extent that argument has any merit, it must be remembered that it is defendants who removed the *Suffolk County* action to federal court, thereby seeking a federal forum, and vigorously opposed plaintiffs' motion to remand. These same defendants now complain about being in federal court at a time when the plaintiffs have asserted an unmistakeable federal claim.[76] If anyone

2004) (after the district court denied plaintiff's motion to remand, plaintiff amended the complaint to add a claim under the ADA; appellate court held the court had jurisdiction and that plaintiff waived its objection to the removal based on its voluntary amendment); *Chabner*, 225 F.3d at 1042 (where the amended complaint solidified rather than destroyed federal jurisdiction, the amendment of the complaint once in federal court to add a federal question claim conferred subject matter jurisdiction on the district court); *Kidd*, 891 F.2d at 540 (after district court denied plaintiff's motion to remand, plaintiff voluntarily amended her complaint to add a federal claim under ERISA, and the court held that "[w]here the disgruntled party takes full advantage of the federal forum and then objects to removal only after losing at the district court level, that party has waived all objections to removal jurisdiction"); *Brough*, 437 F.2d at 748 (following a denial of plaintiff's motion to remand, plaintiff "did not proceed simply on the basis of his original theory of recovery," which turned out to have been insufficient to support removal, but rather amended his complaint to add a claim that "obviously arises under federal law," which the court held "had the effect of curing the defect in the district court's jurisdiction," finding plaintiff's decision to amend "to be a waiver of any objection to the denial of remand").

In addition, a district court decision found, although acknowledging that the law on that point was "not entirely clear," that the court could consider an amended complaint in addressing whether it had subject matter jurisdiction in the face of an improper removal. *See Home Savings & Loan Assoc. of Joliet v. Samuel T. Isaac & Assocs., Inc.*, 496 F.Supp. 831, 835 (N.D.Ill.1980) (stating that "where a complaint has been amended after removal to—for the first—time—set forth a basis for federal jurisdiction, the federal court hearing the matter, if said basis for federal jurisdiction is found to be valid, becomes vested with jurisdiction to proceed further, even if it is

shown later that removal had been improvidently granted[,]" but ultimately holding that the amended complaint did not involve a federal question). Defendants' selective quotation of *Rudow v. Monsanto*, No. C99–4700, 2001 WL 228163 (N.D.Cal. Mar.1, 2001), to distinguish this case, *see* Def. Reply Mem. at 3, is slightly misleading insofar as it omitted *Rudow*'s distinction between *Home Savings*, which "concern[ed] *federal question* jurisdiction" and the facts of *Rudow*, stating that "it would be too much of a stretch to conclude ... that a district court may treat as cured *diversity* jurisdiction that was wanting at the time of removal." *Rudow*, 2001 WL 228163, at *5.

76. According to the defendants, when "plaintiffs sought to add TSCA claims, however, all defendants had answered plaintiffs' complaint, and none consented to amendment. As a result, plaintiffs could not amend without leave of the court." 8/23/07 Tr. at 3–4. However, at oral argument, defendants conceded that they did not formally object because the Court had informed the defendants they could always move to dismiss the claim pursuant to Rule 12(b)(6), which was the typical practice for the Court with respect to amended complaints. *See* 8/23/07 Tr. at 18. Defendants never filed a motion to dismiss, nor have they filed a summary judgment motion on the TSCA claim despite the Court's repeated inquiries into whether they intended to file such motions. *See, e.g.*, Transcript of August 22, 2006 status conference at 25–26; Transcript of June 19, 2007 status conference at 19.

In the current motion, however, defendants assert, for the first time, that plaintiffs lack standing to bring the TSCA claim. *See* Def. Mem. at 13–14. The argument lacks any merit. TSCA allows citizen suits against "[a]ny person who manufactures, processes, or distributes in commerce a chemical substance or mixture" such as MTBE. 15 U.S.C. § 2607(e). In turn, it is unlawful to "fail or refuse to ... submit reports, notices, or other

should be estopped from complaining under these circumstances, it is the defendants.

### 3. Curative Action Is Not Limited to Appellate Courts

In opposition to this list of persuasive authorities, defendants rely on the general rule that the court's jurisdiction must be evaluated as of the time of filing or removal (the "time-of-filing" rule).[77] Defendants recognize one exception to the general rule, acknowledging that "the entry of final judgment can alter the analysis for purposes of appeal."[78] Defendants then cite a number of cases where appellate courts salvaged jurisdiction by assessing the jurisdictional posture of the case at the time final judgment is entered.[79] One problem with this distinction between the power of appellate courts and that of district courts is that an appellate court rarely hears a case prior to a final judgment. Another problem is that appellate courts often refer to final judgment as a milestone for gauging the stage of litigation in an efficiency analysis, rather than as a prerequisite for sustaining jurisdiction.[80] In addition, if such a distinction was ever valid—and it is not clear that it was, given the Supreme Court's recognition that a district court has the power to decide a motion (e.g., under Rule 21) at a time that the district court lacked jurisdiction—it may no longer be good law.

### a. Grupo Dataflux v. Atlas Global Group L.P.

In Grupo Dataflux v. Atlas Global Group L.P., plaintiff sued in federal court,

---

information." Id. § 2614(3)(B). The statute also recognizes the availability of injunctive relief. See id. § 2619(a)(1). Plaintiffs plainly have standing to bring the TSCA claim against the named defendants.

**77.** See Pullman, 305 U.S. at 537, 59 S.Ct. 347. The time-of-filing rule is a judicial gloss on the diversity statute that spares federal courts the inefficiency and instability that result from parties' manipulation of federal jurisdiction. See 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3608, at 449 (2007) (stating in a section entitled "Time of Determining **Diversity** Jurisdiction" that "[t]he general rule that 'if jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction ... is not attributable to any specific statute or to any language in the statutes which confer jurisdiction.' Rather, it represents a policy decision 'that the sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action.' This approach provides maximum stability and certainty to the viability of the action and minimizes repeated challenges to the court's subject matter jurisdiction." (emphasis added) (quoting Dery v. Wyer, 265 F.2d 804, 808 (2d Cir.1959))). See also Chabner, 225 F.3d at 1046 n. 3 ("Al-

though normally jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments, that rule applies mainly in cases where the amended complaint attempts to destroy federal jurisdiction after the case has been properly removed."). It stands to reason that this rule was developed in the context of diversity jurisdiction. A plaintiff could (and, before the time-of-filing rule, often did) add a non-diverse defendant to defeat diversity jurisdiction. A plaintiff cannot add a federal claim to defeat federal question jurisdiction, only to solidify it.

**78.** Def. Reply Mem. at 4 (citing Caterpillar, 519 U.S. at 61, 117 S.Ct. 467, and Grubbs, 405 U.S. at 699, 92 S.Ct. 1344, both of which allowed an appellate court to salvage jurisdiction by recognizing a preverdict cure of a jurisdictional defect that was not noticed until after final judgment).

**79.** See id. at 4–5 (citing, e.g., Grubbs, 405 U.S. at 702, 92 S.Ct. 1344; Barbara, 99 F.3d at 56; Kidd, 891 F.2d at 540).

**80.** Cf. Grupo Dataflux, 541 U.S. at 570, 124 S.Ct. 1920 (rejecting the Fifth Circuit's holding that a district court must dismiss a case "[i]f at any point prior to the verdict or ruling, the issue [of jurisdiction] is raised").

alleging diversity jurisdiction.[81] It turned out that the parties were not diverse at the time of filing because a defendant partnership included partners who shared citizenship with the plaintiff. This jurisdictional defect was never noticed in the district court, and a subsequent change in membership of the defendant partnership eliminated the problem before the district court entered judgment in favor of plaintiff. Certain defendants appealed, arguing that the court had no jurisdiction due to the lack of diversity at the time the case was filed. The Fifth Circuit Court of Appeals held that because the jurisdictional defect had been cured prior to the entry of final judgment, the circuit court had the power to salvage jurisdiction based on the fact that by the time of final judgment, the district court had subject matter jurisdiction based on diversity of citizenship.

The Supreme Court reversed, holding that this change in the status of a continuing party could not cure the original defect in jurisdiction. The Court reasoned that the status of a party must be evaluated at the time of the filing, and a subsequent change in that status makes no difference from the perspective of analyzing jurisdiction, whether that change is noticed before or after final verdict. That is, a defect in jurisdiction is either curable or it is not, and it does not matter in which court or at what stage the cure is first noticed.

> [T]here is no basis in reason or logic to dismiss preverdict if in fact the change

in citizenship has eliminated the jurisdictional defect. Either the court has jurisdiction at the time the defect is identified (because the parties are diverse at that time) or it does not (because the postfiling citizenship change is irrelevant). If the former, then dismissal is inappropriate; if the latter, then retention of jurisdiction postverdict is inappropriate.[82]

Thus, for all intents and purposes, the Court has eliminated the distinction between the power of an appellate court to recognize a preverdict cure and the power of a trial court to do the same.[83]

### b. Instances in Which a Subsequent Event or Proposed Subsequent Event Does Not Cure a Defect in Jurisdiction

Defendants cite a string of cases in which courts have declined to allow a cure where the Court lacked jurisdiction at the time of removal or filing. While it is not necessary to discuss each case in detail, it is sufficient to say that each such case is distinguishable from the instant case in one or more important respects.

One case cited by defendants is particularly noteworthy. Defendants rely on a Ninth Circuit case, *Libhart v. Santa Monica Dairy Co.*, for the proposition that a district court lacks jurisdiction to entertain an amendment to a complaint when a removal petition fails to establish subject

---

81. *See* 541 U.S. at 567, 124 S.Ct. 1920.

82. *Id.* at 576, 124 S.Ct. 1920 (holding that limiting the "cure" to postverdict proceedings is unsound).

83. I recognize that the *Grupo Dataflux* suit originated in federal court, as opposed to being removed from state court. Thus, the question remains whether a defective removal can be cured *at any level* by a post-removal cure. But given the reasoning of *Grupo Da-*

*taflux*—that there is no principled distinction between a cure at the trial level or at the appellate level—the appellate cases *permitting* a defective removal to be *cured* by a subsequent change (either by dropping or adding a party or by amendment to add a federal claim), solidifying rather than destroying jurisdiction, should also be available to the district courts. *See, e.g., Chabner*, 225 F.3d at 1046 n. 3.

matter jurisdiction.[84] In reaching its decision, the Ninth Circuit Court of Appeals relied on the language of the removal statute, 28 U.S.C. § 1447(c), which it quoted in a footnote. The relevant portion of the statute *at that time* provided that "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case ...."[85] However, defendants failed to note that the removal statute was amended in 1988 in a very important respect. The pertinent portion of the section *now* states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[86] This amendment to the removal statute might

well have affected the result in *Libhart* because at the time of final judgment, there would have been federal jurisdiction had the amendment to the complaint been recognized.[87] Given the language of the removal statute as it stood in 1979, however, the removal defect itself required a remand.

In several other cases, the defect in jurisdiction was found to be "not curable," like the defect in diversity jurisdiction at issue in *Grupo Dataflux*.[88] In several cases, the district court was aware that it lacked jurisdiction ("had noticed the defect") over the case at the time it declined to accept an amendment that would have permitted it to exercise jurisdiction over the action.[89] Moreover, because the vast

---

**84.** *See* 592 F.2d 1062 (9th Cir.1979) (cited in Def. Mem. at 10–11).

**85.** *Id.* at 1065 n. 2 (quoting 28 U.S.C. § 1447(c)).

**86.** 28 U.S.C. § 1447(c) (2007).

**87.** It comes as no surprise, therefore, that the Ninth Circuit reached a different outcome in its 2000 decision in *Chabner*, 225 F.3d at 1046 n. 3, than in *Libhart* in 1979. Defendants also cite two district court decisions that cite *Libhart*. *See* Def. Mem. at 11–12 (citing *Hicks v. Universal Housing, Inc.*, 792 F.Supp. 482 (S.D.W.Va.1992), and *Bell v. Amcast Industrial Corp.*, 607 F.Supp. 486 (S.D.Ohio 1985)). Both cases are inapposite. *Hicks* was remanded very early in the action when it became clear that both parties were attempting to manipulate diversity jurisdiction. *Bell* relied on the same pre–1988 version of the statute as *Libhart*.

**88.** *See, e.g., Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261 (9th Cir.1999) (removal was defective based on failure to get consent of all defendants within thirty days and no cure was effected prior to final judgment); *Toshavik v. Alaska Airlines, Inc.*, No. N99–2CV, 1999 WL 33456492 (D.Alaska Nov.15, 1999) (failure of all defendants to join in notice of removal not a curable defect). *Cf. Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) (appellate court exercised jurisdiction

to sustain a final judgment where jurisdiction was challenged because the sole defendant that had not consented to removal did consent, albeit untimely, creating unanimity of consent to remove prior to the final judgment). Defendants cite *Parrino* as forbidding a *district* court from retaining jurisdiction over an improperly removed action. *See* Def. Mem. at 6. However, the *Parrino* court did not write with such broad strokes. Rather, the court stated that only the Court of Appeals could "treat as cured a *procedural defect in the removal process* corrected before entry of judgment." *Parrino*, 146 F.3d at 703 n. 1 (emphasis added). In making that statement, the court was responding to the dissent's concern that the court was reading *Caterpillar* as permission "to ignore the *procedural requirements* for removal." *Id.* (emphasis added). The present case, by contrast, does not involve any procedural defect. Moreover, to the extent that *Parrino*'s distinction between the power of district courts and appellate courts applies as broadly as defendants suggest, the Supreme Court's decision in *Grupo Dataflux* has cast significant doubt on that distinction. *See supra* Part IV.A.3.a.

**89.** *See, e.g., Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889 (2d Cir.1983;) (in case originally filed in federal court alleging federal question jurisdiction court had already granted a motion to dismiss for lack of juris-

majority of these cases were at a relatively early stage of the proceedings, generally directly after removal or at the motion to dismiss stage, at the time the court declined to act on a proposed amendment, there was little or no concern for finality, efficiency or economy.[90] Finally, one case cited by defendants declined to find jurisdiction based on a post-removal amendment when it deemed that amendment to be "involuntary" and also noted that "[t]his case had consumed, relatively, a minimum of judicial resources. No hearing was ever held in this matter."[91]

In sum, after three and a half years of intense and complex litigation, scores of formal and informal court conferences, and many opinions, I conclude that plaintiffs' voluntary amendment, which added an unmistakable federal claim before the defect in removal was identified, is sufficient to confer subject matter jurisdiction upon this Court despite what now appears to have been an improvident removal. Any other result would ignore the years of effort by the Court and the parties—a critical factor specifically recognized by the Supreme Court and several circuit courts.[92] I turn now to the question of whether this Court has the power to exercise supplemental jurisdiction over the state law claims and, if so, whether it should nonetheless exercise its discretion to remand those claims to state court.

**B. This Court Has Supplemental Jurisdiction Over the Remaining State Law Claims and Defendants Named Only in Those Claims and Declines, in Its Discretion, to Remand the State Law Claims**

"Although the district courts may not exercise jurisdiction without a statutory basis, it is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in

---

diction at the time it denied plaintiff leave to amend the complaint); *Fredrickson v. Consolidated Supply Corp.*, No. 05 CV 1704, 2006 WL 752587 (D.Or. Mar. 21, 2006) (in case improvidently removed to federal court based on failure to obtain consent of all defendants court rejected moving defendant's argument that it *might have been able* to cure the defect prior to final judgment); *Vasura v. Acands*, 84 F.Supp.2d 531 (S.D.N.Y.2000) (granting plaintiff's motion to remand made soon after removal despite defendant's argument that post-removal release of nondiverse defendant based on settlement established jurisdiction); *Falise v. American Tobacco Co.*, 241 B.R. 63 (E.D.N.Y.1999) (court had already dismissed the action based on a motion to dismiss for lack of subject matter jurisdiction when it denied plaintiff's motion for leave to amend to add a federal claim); *Asset Value Fund Ltd. P'ship v. Care Group*, 179 F.R.D. 117 (S.D.N.Y.1998) (plaintiff had conceded lack of diversity before the district court denied plaintiff's motion to amend the complaint in order to add a federal securities claim on the eve of trial); *Broad v. DKP Corp.*, No. 97 Civ.2029, 1998 WL 516113 (S.D.N.Y. Aug. 19, 1998) (unpublished memorandum and order) (court found lack of diversity before it denied the motion to amend the complaint to assert a federal question (RICO) claim); *Hicks*, 792 F.Supp. at 482 (court found that it lacked diversity jurisdiction based on inadequate amount in controversy before it addressed plaintiff's motion to amend the pleadings).

**90.** *See Rudow*, 2001 WL 228163 (citing the now-questionable "final judgment" exception and declining to exercise jurisdiction several months after the action was removed based on a post-removal dismissal of nondiverse defendant); *Toshavik*, 1999 WL 33456492 (motion to remand decided shortly after removal). *See also supra* note 89.

**91.** *Waste Control Specialists, LLC v. Envirocare of Texas, Inc.*, 199 F.3d 781, 787 (5th Cir.2000).

**92.** Moreover, such a result would frustrate the purpose of the Federal Rules of Civil Procedure, which "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1.

the action, it may exercise supplemental jurisdiction over additional claims that are part of the same [Article III] case or controversy." [93]   Prior to 1990, the Supreme Court had applied the concept of supplemental jurisdiction [94] narrowly, holding that "in the context of parties, in contrast to claims, 'we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly.' " [95]   Thus, "even when the district court had original jurisdiction over one or more claims between particular parties, the jurisdictional statutes did not authorize supplemental jurisdiction over additional claims involving other parties." [96]

In 1990, however, Congress broadened the jurisdiction of district courts when it enacted the supplemental jurisdiction statute, 28 U.S.C. § 1367 ("section 1367").[97] In passing the statute, Congress gave district courts jurisdiction over claims and parties over which the court lacked original jurisdiction under sections 1331 and 1332, so long as all of the claims arise out of the same case or controversy under Article III. Section 1367 states:

> ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.   Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.[98]

For example, in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, ten thousand Exxon gasoline dealers brought state law claims against the Exxon Corporation.[99]

---

**93.** *Allapattah*, 545 U.S. at 552, 125 S.Ct. 2611.   In other words, it has long been true that "if the district court had original jurisdiction over at least one claim, the jurisdictional statutes implicitly authorized supplemental jurisdiction over all other claims between the same parties arising out of the same Article III case or controversy." *Id.* at 556, 125 S.Ct. 2611 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

**94.** Congress coined the phrase "supplemental jurisdiction" when it enacted section 1367. *See* H.R.Rep. No. 101–734, at 27 (1990), reprinted in 1990 U.S.C.C.A.N. 6860, 6873.   Prior to the enactment of the statute, the concepts of pendent and ancillary jurisdiction were jurisprudential doctrines. *See generally Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294 (7th Cir.1995).

**95.** *Id.* (quoting *Finley v. United States*, 490 U.S. 545, 549, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)).

**96.** *Id.* at 556–57, 109 S.Ct. 2003 (citations omitted).

**97.** The statute was enacted December 1, 1990, as part of the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089 (codified at 28 U.S.C. § 1367). *See Allapattah*, 545 U.S. at 559, 125 S.Ct. 2611 ("[Section] 1367(a) is a broad jurisdictional grant, with no distinction drawn between pendent-claim and pendent-party cases."). *See also id.* at 557, 125 S.Ct. 2611 ("In *Finley* we emphasized that '[w]hatever we say regarding the scope of jurisdiction conferred by a particular statute can of course be changed by Congress.'   In 1990, Congress accepted the invitation." (citation omitted)).

**98.** The word "shall" in section 1367(a) is construed "to mean that a federal court *must* exercise supplemental jurisdiction if it is found to exist."   16 James Wm. Moore et al., *Moore's Federal Practice* § 106.61 (3d ed.1997) (emphasis added).   In contrast, section 1367(c) gives the district court the discretion to remand the state law claims over which it has jurisdiction if it should find that any of the subsections is satisfied. *See infra* Part IV.B.2.

**99.** *See Allapattah*, 545 U.S. at 550, 125 S.Ct. 2611.

The dealers alleged that Exxon had promised to reduce the price of wholesale fuel by roughly the same percentage that it was charging for processing credit card receipts through its "Discount for Cash program."[100] At trial, a jury found that Exxon breached that promise by not lowering the price of the wholesale gasoline and diesel fuel.[101] The sole basis for original jurisdiction over the state law claims was that some of the plaintiffs were citizens of different states than Exxon and the amount in controversy exceeded the jurisdictional requirement. Other plaintiffs, however, failed to satisfy the amount in controversy requirement. Nonetheless, the Supreme Court held that, under the plain language of section 1367, the district court had jurisdiction over all of the claims and all of the parties that were part of the same controversy.

With that overview, I now address first whether I have jurisdiction over the state law claims and the defendants named only in those claims because they form part of the same case or controversy at issue in the federal claim. I then consider whether, despite having jurisdiction, I should exercise my discretion to remand the state law claims to state court.

### 1. This Court Has Jurisdiction Under Section 1367(a) Over All of the Claims Because They Are Part of the Same Case or Controversy

Defendants argue that this Court lacks jurisdiction over the state law claims on the ground that they do not form part of the "same case of controversy" as the TSCA claim, as required by section 1367(a). This argument has no merit.

### a. The State and Federal Claims Must Be Part of the Same Case or Controversy

■ Federal and state claims form "one case or controversy," and thus satisfy section 1367(a), if they "derive from a common nucleus of operative facts or when both claims would normally be expected to be tried in a single judicial proceeding."[102]

---

**100.** See *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F.Supp.2d 1308, 1311–12 (S.D.Fla.1999).

**101.** See *id.* at 1313.

**102.** *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir.2006). *Accord Lyndonville Savings Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir.2000). However, the "common nucleus of operative facts" test may be too strict because section 1367(a) grants a federal court jurisdiction to the full extent provided by the Constitution. That is, claims that may not satisfy the "common nucleus" test may nonetheless be part of the same "case or controversy."

The "common nucleus" test comes from the Supreme Court's 1966 decision in *Gibbs*, which was not based on the Constitution's definition of "case or controversy" but rather on a court's authority to administer justice fairly, efficiently, and with minimal waste and burden. See *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. The phrase "case or controversy" as used in Article III is broader than the test formulated in *Gibbs*, which was constrained by prudential concerns (*e.g.*, reducing waste and burden to the judicial system). Thus, a federal court's jurisdiction under section 1367(a) logically should be broader than the inherent authority recognized in *Gibbs*. The Second Circuit expressly raised this question but left it open. See *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 & n. 5 (2d Cir.2004) (noting that "[t]here is some doubt as to whether section 1367's expansion of supplemental jurisdiction to its constitutional limits renders the provision's scope broader than was contemplated in *Gibbs*"). Of course, because jurisdiction is present in this action, even under the *Gibbs* test, it follows that this Court has jurisdiction under any definition of "case or controversy" under Article III. See *id.* at 213 ("Whether or not the *Gibbs* 'common nucleus' standard provides the outer limit of an Article III 'case,' and is therefore a requirement for entertaining a permissive counterclaim that otherwise lacks a jurisdictional basis, the facts of [Defen-

Although there are many examples of cases defining a common nucleus of operative facts, a recent Second Circuit decision is of particular interest because it demonstrates the breadth of the "single case or controversy" concept. In *Achtman v. Kirby, McInerney & Squire*, plaintiffs brought a state law claim in federal court against their former attorneys for malpractice in violation of New York state law.[103] The only asserted basis for federal jurisdiction in the complaint was the terms of the district court's injunction in plaintiffs' securities fraud action (in which defendants served as plaintiffs' attorneys). That injunction mandated that any legal malpractice action in connection with the securities action must be brought in federal court.[104] "The district court dismissed the malpractice complaint for failure to state a claim after determining that defendants' actions were reasonable as a matter of law."[105] Plaintiffs appealed the dismissal, and the Second Circuit remanded the case to the district court for the "limited purpose of having it explain its basis for exercising subject matter jurisdiction over the action."[106] Responding to the Second Circuit's directive, the district court explained that it relied, *inter alia*, on section 1367(a), and the Second Circuit affirmed on that basis.[107]

As an initial matter, the Second Circuit recognized that some district courts "have refused to rely on the existence of subject matter jurisdiction in one action to provide supplemental jurisdiction over claims in a related action."[108] "This distinction [of a separate action as the basis for jurisdiction], however, has never troubled us."[109]

Turning to the question of whether section 1367(a) was satisfied, the Second Circuit explained: "In determining whether two disputes arise from a 'common nucleus of operative fact,' we have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped ... [or] the federal claim necessarily brought the facts underlying the state claim before the court.' "[110] The Second Circuit was "compelled ... to find that the facts underlying the present malpractice claims and the underlying securities claims 'substantially overlap[ ],' creating a common nucleus of operative fact."[111]

The district court had managed the securities action for a number of years and, in so doing, had issued rulings related to that case. "The district court was thus well-placed to consider the issues that would arise in the malpractice action, including questions as to whether [the plaintiffs' counsel] asserted all appropriate

---

dant's] counterclaims and those of Plaintiffs' [federal Equal Credit Opportunity Act] claims satisfy that standard, even though the relationship is not such as would make the counterclaims compulsory.").

**103.** *See Achtman v. Kirby, McInerney & Squire, LLP,* 336 F.Supp.2d 336, 339 (S.D.N.Y.2004). Plaintiffs also brought their action on behalf of a putative class.

**104.** *See Achtman,* 464 F.3d at 332.

**105.** *Id.* at 330.

**106.** *Id.* at 331 (explaining the purpose of the court's remand order). *Accord Achtman v. Kirby, McInerney & Squire, LLP,* 150 Fed.

Appx. 12, 15 (2d Cir.2005) (ordering the remand).

**107.** *See Achtman,* 464 F.3d at 334–36.

**108.** *Id.* at 335 (citations omitted).

**109.** *Id.* (citing *Alderman v. Pan Am World Airways,* 169 F.3d 99, 101–02 (2d Cir.1999) (supplemental jurisdiction over separate contract dispute action based on jurisdiction over settled wrongful death action)).

**110.** *Id.* at 335 (quoting *Lyndonville,* 211 F.3d at 704).

**111.** *Id.* at 336.

claims."[112] Moreover, "the district court was intimately familiar with [the law firms'] overall strategy and the time they spent pursuing their clients' interests."[113] While "there would surely be some facts at issue in the malpractice action that were not directly implicated in the [underlying] securities litigation itself,"[114] the court nonetheless had jurisdiction over the separate malpractice action.

*Achtman* also relied on the Second Circuit's ruling that federal courts have jurisdiction in "fee dispute" cases.[115] So long as the action for which the attorney was hired involved a federal claim in federal court, the Second Circuit has held that the fee dispute (between an attorney and client) could be resolved in federal court even though that dispute raised only a state law breach of contract claim. For example, the *Achtman* Court relied on its earlier holding in *Itar–Tass Russian News Agency v. Kurier, Inc.*,[116] quoting that decision as holding that "the district court had the power to exercise supplemental jurisdiction over a fee dispute because it had already 'obtained total familiarity with the subject matter of the [underlying] suit and the professional services of the moving parties thereon and of the virtual totality of all the compensation arrangements contended for and disputed.' "[117] The court went on to note that in *Itar–Tass*, "[a]fter

identifying these clear hallmarks of a common nucleus of operative fact, [the *Itar–Tass* court] focused exclusively on the district court's discretionary decision to decline jurisdiction."[118]

*Achtman* described the outer limits of the "same case or controversy" doctrine, given that it addressed a case with no independent federal claim but one related to a *different* case that had federal claims. There are many cases like this one, where state and federal claims are brought in one lawsuit. In those cases, the courts have engaged in the same analysis of whether there is a "common nucleus of operative facts" among the state and federal claims.[119]

For example, in *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* plaintiffs did not expressly plead any copyright violations but instead alleged a number of state law claims that could potentially be preempted by the Copyright Act.[120] The Second Circuit held that some of the claims were preempted, but other claims were not. The court went on to conclude that supplemental jurisdiction over the non-preempted state law claims was proper because all of the claims were derived from a common nucleus of operative facts for one reason: "they all deal with the purported sale of the [allegedly infringing] movie."[121]

112. *Id.*

113. *Id.*

114. *Id.*

115. *See id.*

116. *See* 140 F.3d 442 (2d Cir.1998).

117. *Achtman,* 464 F.3d at 336 (quoting *Itar–Tass,* 140 F.3d at 445).

118. *Id.*

119. *See, e.g., Rothberg v. Chloe Foods Corp.,* No. 06 Civ. 5712, 2007 WL 2128376, at *8

(E.D.N.Y. July 25, 2007) ("In the present case, subject matter jurisdiction over the RICO claim is conferred pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and the claims against the non-RICO defendants do arise from the same set of operative facts, namely the overall scheme to defraud plaintiff and other creditors by siphoning off the assets of Blue Ridge Farms and allocating those assets among the companies controlled by Kontogiannis.").

120. *See* 373 F.3d 296 (2d Cir.2004).

121. *Id.* at 308.

Similarly, in *Jones v. Ford Motor Credit Co.*, plaintiffs brought suit alleging race discrimination under the federal Equal Credit Opportunity Act ("ECOA").[122] In its Answer, defendant asserted permissive state-law counterclaims against the named plaintiffs to collect on unpaid car loans.[123] The Second Circuit concluded that supplemental jurisdiction may be available for permissive counterclaims, and that:

> The counterclaims and the underlying claim bear a sufficient factual relationship (if one is necessary) to constitute the same "case" within the meaning of Article III and hence of section 1367. *Both the ECOA claim and the debt collection claims originate from the Plaintiffs' decisions to purchase Ford cars.*[124]

Having concluded that the court had jurisdiction under section 1367(a) it remanded to the district court to determine whether it should decline to exercise supplemental jurisdiction under section 1367(c).[125]

As these cases demonstrate, pointing to differences among claims (*e.g.*, different underlying facts, different defendants) does not help determine whether the claims are part of the same case or controversy. Rather, the key question is whether the parties would ordinarily be expected to try all of those claims in one judicial proceeding given the common threads running throughout the claims.

### b. The Federal and State Claims in the *Suffolk County* Action Are Part of the Same Case or Controversy

■ A comparison of the claims in the *Suffolk County* action demonstrate that the state and federal claims share a common nucleus of operative facts and are part of the same case or controversy. A good example is the issue of the defendants' knowledge and concealment of the dangers of MTBE. Plaintiffs' TSCA claim alleges, in essence, that certain defendants violated the Act by withholding "information which reasonably supports the conclusion that [MTBE and/or gasoline with MTBE] presents a substantial risk of injury to health or the environment" from the Environmental Protection Agency.[126] Plaintiffs' public nuisance, private nuisance, and trespass claims assert that defendants' concealment of MTBE's hazards led to its widespread use, and ultimately to

---

122. *See* 358 F.3d at 201.

123. *See id.* at 207.

124. *Id.* at 213 (emphasis added).

125. A recent decision from this Court is also instructive. In *Ouedraogo v. Durso Associates, Inc.*, plaintiffs sued a group of four different companies, alleging that they were paid less than minimum wages with no overtime and sued to recover unpaid wages under the federal Fair Labor Standards Act and New York Labor Law. *See* No. 03 Civ. 1851, 2005 WL 1423308, at *1 (S.D.N.Y. June 16, 2005). The state law claims, however, were alleged only against two of the four defendants. Obviously, each claim involved different plaintiffs, different defendants, different time periods of employment and different alleged violations. Nonetheless, the court concluded that "the federal and state law claims derive from a common nucleus of operative fact and warrant the exercise of supplemental jurisdiction" over all of the claims and all of the defendants because, *inter alia*:

> Plaintiffs allege similar claims and all share a basic common story, namely, that, as employees of Hudson/Chelsea, they were placed in various Key Food stores where they delivered groceries and allegedly provided a range of in-store help, worked long hours, and were paid wages below the statutory minimum. The claims against Matlyn will involve overlapping testimony, depositions and documentation with other plaintiffs' federal and state claims .... Ultimately, [the] state law claims share too many common threads with the other plaintiffs' federal claims for them to be separated from one another.

*Id.* at *2.

126. 15 U.S.C. § 2607(e).

its appearance in Suffolk County's groundwater, interfering with public groundwater supplies, as well as private property rights in land and groundwater. Plaintiffs' products liability claims allege that defendants "had knowledge of the risks and failed to use reasonable care in the design of gasoline containing MTBE" [127] and, further, failed to inform consumers and handlers of MTBE-containing gasoline of the risks it posed. The negligence claim asserts that defendants failed to adequately test or truthfully report the properties of MTBE that make it hazardous to groundwater. Plaintiffs' claim under the New York General Business Law alleges deceptive business practices in marketing and selling MTBE-containing gasoline without disclosing the properties that make it hazardous. Finally, Plaintiffs' claim under New York's Navigation Law (often called "the Oil Spill Act") allege that defendants discharged petroleum products that have contaminated the groundwater in their wells.

That overview of the TSCA and various state law claims makes clear that any issues related to what the oil companies knew, and when they knew it, are raised by the TSCA claim and also by those state law claims.[128] Moreover, the question of when one oil company knew of the dangers of MTBE will be relevant as to when another company knew, or should have known, about the threat.[129]

Further, much of the evidence related to MTBE that plaintiffs will proffer is relevant to both the federal and state claims. For example, in order to establish their TSCA claim, plaintiffs must prove that the twelve defendants failed to inform the EPA of substantial information they possessed that reasonably supports the conclusion that the gasoline containing MTBE presents a substantial risk of injury to public health or the environment. Similarly, to prove plaintiffs' state-law strict liability claim, plaintiffs must establish that MTBE was an unreasonably dangerous product.[130] While the jury instructions will differ as to each of those claims, plaintiffs will be required to present much of the same evidence to the jury regarding MTBE's toxicity, its solubility in water, and the levels at which it harms drinking water in order to prove both the federal and state claims.

This is not a situation where "the federal and state claims rested on essentially unrelated facts." [131] In the *Suffolk County*

---

**127.** 6AC ¶ 230.

**128.** Likewise, many of the defenses that will be raised are relevant to both the federal and state claims. For example, when the oil companies argue that MTBE is not harmful, or at the very least not as harmful as plaintiffs contend, they will be raising an issue that underlies all of the claims.

**129.** Though it is not evidence, the following observation highlights the type of operative fact that underlies many of the claims as well as the type of argument the jury will need to consider: "ARCO first began producing MTBE in December 1979. At that time, MTBE's awful taste and odor were no secret, and its high solubility in water was a characteristic that was easily ascertainable by any engineer." Thomas O. McGarity, *MTBE: A*

*Precautionary Tale,* 28 Harv. Envtl. L.Rev. 281, 286 (2004).

**130.** *See, e.g., Denny v. Ford Motor Co.,* 87 N.Y.2d 248, 256–57, 639 N.Y.S.2d 250, 662 N.E.2d 730 ("Under New York law, a design defect may be actionable under a strict products liability theory if the product is not reasonably safe.").

**131.** *Lyndonville,* 211 F.3d at 704 (citing *Young v. New York City Transit Auth.,* 903 F.2d 146, 162–64 (2d Cir.1990) (holding that challenge to transit regulation prohibiting panhandling and challenge to state penal law prohibiting loitering shared no common nucleus of operative fact); *Wigand v. Flo–Tek, Inc.,* 609 F.2d 1028, 1033 (2d Cir.1979) (as amended) (reversing the district court's exercise of jurisdiction where the federal claim

action, much of the evidence, argument, and ultimate fact-finding by the jury will be the same with respect to the time between 1979, when the companies first began to add MTBE, until the moment the gasoline was released into the environment—at which point the fact finding may diverge for each of the claims. This, of course, is true in every case or controversy where many claims are brought in one action. Finally, there is no question that the court's familiarity with the subject matter also weighs in favor of relatedness.[132] Under such circumstances, the parties would "would ordinarily be expected to try [their claims] all in one judicial proceeding."[133]

Regardless of the differences that defendants have identified among the state and federal claims, there is a certainly a common nucleus at the center of all of the claims: "two plaintiffs, the County of Suffolk and the Suffolk County Water Authority, sued various corporations for their use and handling of the gasoline additive methyl tertiary butyl ether ('MTBE')."[134] Indeed, this common nucleus of operative fact is why the Judicial Panel on Multidistrict Litigation has repeatedly transferred actions involving MTBE to this Court.

Because the common threads running through the claims here are numerous and overlapping, a party would ordinarily expect all of them to be resolved in one proceeding. This Court therefore has jurisdiction under section 1367(a) over all of plaintiffs' claims against all of the defendants.[135]

---

rested on events prior to the effective date of a contract while the state law claim rested on events occurring after that date)). However, it is worth noting that *Young* and *Wigand* were decided prior to the passage of section 1367 in 1990, which "broad[ened]" the federal courts' exercise of supplemental jurisdiction. *See Allapattah*, 545 U.S. at 559, 125 S.Ct. 2611.

Defendants have relied on pre–1990 cases throughout their brief and at oral argument. For example, defendants continually referred to *Hales v. Winn–Dixie Stores, Inc.*, 500 F.2d 836 (4th Cir.1974), for the proposition that a claim with different remedies cannot satisfy section 1367's "case or controversy" test. *See* Def. Mem. at 17–19; 8/23/07 Tr. at 58–59. However, *Winn–Dixie* was decided over fifteen years before the passage of section 1367 and was based on the prudential concerns underlying *Gibbs*. Any analysis offered by *Winn–Dixie* is not of much value in determining whether section 1367(a) is satisfied here. *See Allapattah*, 545 U.S. at 559, 125 S.Ct. 2611.

**132.** *See Achtman*, 464 F.3d at 336 (citing *Itar–Tass*, 140 F.3d at 445). *See also supra* note 8 and accompanying text (discussing this Court's extensive involvement with this case and the MTBE cases in general).

**133.** *Gibbs*, 383 U.S. at 725, 86 S.Ct. 1130.

**134.** *In re MTBE Prods. Liab.*, 2007 WL 1791258, at *1.

**135.** Plaintiffs have argued that this Court has jurisdiction over the state law claims even absent the TSCA amendment based on two circumstances. *First*, all of the actions in this MDL are part of a large case or controversy involving MTBE, in which the court undoubtedly has original jurisdiction over some of the cases. *Second*, in late December 2003 and January 2004, defendants filed thirteen declaratory judgment actions in federal court, asserting federal preemption, and naming the plaintiffs in the MTBE actions as declaratory judgment defendants. Defendants dismissed these actions over three years later, in June 2007, during the briefing of the instant motion. Because the Court had jurisdiction over these actions, plaintiffs argue that the Court has supplemental jurisdiction over the Suffolk County action under section 1367 as part of the same case or controversy. *See Achtman*, 464 F.3d at 336 (holding that section 136*7 gives a federal court jurisdiction over an action related to another action where the court had original jurisdiction so long as they are part of the same case or controversy). Because I find that this court has original jurisdiction based on TSCA there is no need to address these arguments at this time.

### 2. Defendants' Motion Under Section 1367(c) Is Denied

There is no dispute that this Court must keep the TSCA claim because federal courts have exclusive jurisdiction to hear claims arising under TSCA.[136] Nonetheless, defendants argue that the Court should exercise its discretion under section 1367(c) and decline to retain supplemental jurisdiction over the state law claims.

■ Section 1367(c) states that the "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

On the other hand, a district court may retain jurisdiction over the action even if one or more of those factors is met. In deciding whether to retain jurisdiction over state law claims in such circumstances, the court must take into account considerations of "economy, convenience, fairness, and comity."[137] Thus, for example, the Second Circuit has stated:

> [I]f the dismissal of the federal claim occurs "late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent [state law] claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary."[138]

Thus, keeping in mind that no factor is dispositive, I will examine the relevant section 1367(c) subsections.[139]

### a. Whether Plaintiffs' Claims Raise Novel or Complex Issues of State Law

■ With respect to section 1367(c)(1), this Court previously held, when addressing plaintiffs' argument that the Court should abstain from exercising its jurisdiction that the *Suffolk County* action "does

---

**136.** 15 U.S.C. § 2619(a) ("Any civil action under paragraph (1) *shall* be brought in the *United States district court* for the district in which the alleged violation occurred ..." (emphasis added)). *See also* 8/23/07 Tr. at 76 (plaintiffs' counsel noting that even if the state claims were remanded, the parties "would still be here on some of our claims on the TSCA claims").

**137.** *See City of Chicago v. International Coll. of Surgeons,* 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) ("The statute thereby reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." (quotation omitted)); *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1191 (2d Cir.1996)

(holding that the court, "having presided over the case since April 6, 1994, and having dismissed Nowak's federal claim only nine days before it was set for trial, acted well within his discretion in exercising supplemental jurisdiction over Nowak's related state causes of action").

**138.** *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994) (quoting 28 U.S.C.A. 1367, Practice Commentary (1993) at 835). *Accord Nowak,* 81 F.3d at 1191–92 (same).

**139.** Section 1367(c)(3) and 1367(c)(4) are not relevant. The Court has not dismissed the federal claim, and no exceptional circumstances are present that would counsel in favor of declining jurisdiction. To the contrary, as discussed below, the exceptional circumstances of this case point in favor of exercising jurisdiction.

**328**

not involve difficult questions of state law .... [A]ll that remains is for this Court to apply the state's law."[140] Indeed, the Court has already applied most of the state law at issue in this case.[141]

Nonetheless, it cannot be denied that as the years have gone by and the defendants have continued to make motions (and plan to make several more), that there are complex issues of state law that continue to be raised. Surely the defendants knew this when they removed the case years ago to federal court. Defendants' oscillating position on the issue of "market share liability" amply illustrates this point.[142]

For the first time, defendants argue that the issues are complex and novel because "this case requires the Court to decide whether the 'market share' theory of liability is viable in this context, and if so, how it should be applied."[143] Of course at the time of removal not a single defendant raised this argument. Indeed, in opposing plaintiffs' timely motion to remand, the removing defendant stated that the "Questions Of State Law [raised by the *Suffolk County* action] Are Not Novel Or Difficult Such That [federal] Abstention Is Warranted" and that "The Suffolk Case Does Not Involve Difficult State Law Questions Warranting Abstention[.]"[144]

---

**140.** *In re MTBE*, 341 F.Supp.2d at 361–62. This is not the only time the Court has applied that reasoning. *See In re MTBE*, 399 F.Supp.2d at 355 (where a state law action, which was not necessarily removable on its own as a federal officer case, was consolidated with a federal officer action, the Court exercised supplemental jurisdiction because the state law claim "does not raise especially novel or complex issues of state law. Indeed, the claims are typical of the claims in the rest of the consolidated MTBE cases pending before this court" and where retaining jurisdiction would promote judicial economy, and prevent duplication of effort and inconsistent judgments, and there were no compelling reasons to decline jurisdiction).

**141.** *See supra* note 8 (discussing the state law issues already reached by this Court).

**142.** *See* Def. Mem. at 23–24.

**143.** *Id.* at 23.

**144.** Marathon Ashland's Memorandum of Law In Opposition to Plaintiffs' Motion for Remand ("Marathon Mem."), attached as Ex. 1 to Pl. Mem., at 11, 12. Many of the defendants also joined in filing a brief in opposition to plaintiffs' motion to remand. *See* Response of Certain Defendants to Plaintiffs' Motion to Remand ("Certain Def. Mem."), dated May 28, 2004, attached as Ex. 4 to Pl. Mem. It is startling at best to compare the words that these "certain defendants" (listed at the end

of this paragraph) wrote in 2004 with their words today. These defendants asserted and discussed at length four interests in federal jurisdiction over this case: "Protection Against Liability and Preservation of the Federal System," "Efficiency," "Consistency," and "Fundamental Fairness." Certain Def. Mem. at 2. The brief concludes:

> Plaintiffs' arguments that the issues in this case are novel or unique, and therefore that they are only suited for resolution in state court, ring hollow in light of the fact that the very same issues are presented (and will be decided) in the other MTBE cases now before this Court. Under the MDL statute, this Court is charged with a special duty to provide for "the convenience of parties and witnesses," and "to promote the just and efficient conduct of [these] actions." 28 U.S.C. § 1407(a). That duty, along with the more general obligation of federal courts to exercise their jurisdiction, combine to make jurisdiction in this case singularly appropriate.

*Id.* at 11. The certain defendants included: "Amerada Hess Corporation, Atlantic Richfield Company, BP Corporation North America Inc., BP Products North America Inc., Chevron U.S.A., Inc., CITGO Petroleum Corporation, El Paso CGP Company, Exxon Mobil Corporation, Motiva Enterprises LLC, ConocoPhillips Company, Shell Oil Company, Shell Oil Products US, Sunoco, Inc. (R & M), and Valero Marketing and Supply Company." *See id.* at 1. "These defendants comprise all of the originally-named defendants in the Suf-

Defendants' current argument that this issue is novel or complex is in poor taste, if not equitably estopped, given the late date at which it is raised. Defendants could have asked the court to remand the state law claims under section 1367 at any time, including after the plaintiffs added a federal claim a year ago. Instead, defendants have waited until the Court issued four opinions on market share liability, including an opinion on the issue as it is applied to the law of fifteen states, before deciding to seek a return to state court.[145] This smacks of forum shopping at its worst.

### b. Whether the State Claims Substantially Predominate Over the Federal Claims

The general rule is that in order "to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact" courts should exercise supplemental jurisdiction over related state law claims.[146] It must be remembered that the section 1367(c) factors create discretionary exceptions to that general rule.

There is a legitimate question here as to whether the state law claims substantially predominate over the federal claim; this factor could go either way. On the one hand, as explained above, the federal and state claims arise out of the same common nucleus of operative facts. Indeed, except for the issue of causation and damages, plaintiffs will present much of the same evidence for all of the claims.[147] Moreover, many of the state law issues have already been decided.[148] On the other hand, the state law claims are substantial and will surely require additional proof against many parties.[149] In any event, it is not important to decide on which side of the line this factor falls because at bottom, this is a discretionary decision and the presence of one of the section 1367(c) factors is not determinative.

### c. The Exercise of Discretion

It is patently clear that considerations of "economy, convenience [and] fairness" weigh heavily in favor of retaining supple-

folk County case, with the exception of Lyondell Chemical Company." *Id.*

**145.** *See In re MTBE*, No. 00 Civ. 1898, MDL 1358 (S.D.N.Y. Aug.16, 2007); *In re MTBE Products Liability Litigation*, 447 F.Supp.2d 289 (S.D.N.Y.2006); *In re MTBE Products Liability Litigation*, 415 F.Supp.2d 261 (S.D.N.Y.2005); *In re MTBE Products Liability Litigation*, 379 F.Supp.2d 348 (S.D.N.Y. 2005) (deciding whether market share liability applies under the law of fifteen states: Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Vermont, Virginia, and West Virginia).

**146.** *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 780 (3d Cir.1995).

**147.** *See Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130.

**148.** *See supra* note 8.

**149.** "It is true that the state claims here outnumber the federal claims. The 'substantially predominate' standard, however, is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert on the basis of the same set of facts." *Borough of West Mifflin*, 45 F.3d at 789. Rather, determination of whether to exercise the exception of section 1367(c)(2) requires "an interest-sensitive analysis rather than a 'numerical count' of state and federal claims.'" *Luongo v. Nationwide Mut. Ins. Co.*, No. 95 Civ. 3190, 1996 WL 445365, at *5 (S.D.N.Y. Aug.7, 1996) (citing *Borough of West Mifflin*, 45 F.3d at 789) (holding that the court had original jurisdiction over Title VII claim and supplemental jurisdiction over state claims of intentional infliction of emotional distress and sexual battery claims against only one of the individual defendants because the claims "require many of the same witnesses, much of the same evidence, and determination of many of the same facts."). *See also Morris v. Yale Univ. Sch. of Med.*, No. 05 Civ. 848, 2006 WL 908155, at *3 (D.Conn. Apr. 4, 2006).

mental jurisdiction over the state law claims and the defendants named only in those claims.[150] At this advanced stage of the litigation, concerns with economy and efficiency are more than compelling, as has been chronicled at length above. Indeed, unlike the typical case where the court could decline to exercise jurisdiction over the entire case including the federal claim, this Court would need to split the case in two because it has *exclusive* jurisdiction over the TSCA claim. This alone weighs heavily against remanding the case as it would guarantee duplication of evidence and judicial resources as well as the possibility of conflicting decisions by the jury or courts.[151]

With respect to fairness, it is perhaps even more compelling to deny defendants' motion given the unique facts of this case. In many ways, defendants' motion, both in its content and its timing, is gamesmanship in its purest form. Defendants removed this case and vigorously contested

plaintiffs' motion to remand. Now, on the basis of changed circumstances, namely, the addition of the TSCA claim and the later appellate decision that removal based on federal officer jurisdiction was improper, those same defendants ask the Court to reconsider whether the very claims they removed to federal court should remain here. If there were ever a case to deny such a request, this is it. As noted earlier, for more than three years, this Court has resolved virtually every substantive and procedural issue in the focus cases, including—and especially—the *Suffolk County* action. The number of opinions and orders has already been noted.[152] Granting defendants' request would result in vacating each and every one of those opinions and orders and would possibly result in a delay of years before a jury finally considers the claims.[153] Further, requiring these cases to be brought in state court would burden a state court with the very time-consuming task of learning the facts, theo-

---

**150.** Neither the parties nor this Court has been able to locate a single case in which an appellate court held that a district court exceeded its discretion in declining to remand state law claims once it found that the state and federal claims arose from the same case or controversy and that the principles of economy, convenience, fairness and comity would be best served by exercising supplemental jurisdiction.

**151.** Defendants point to the fact that the remedies sought by plaintiffs are not the same under the federal and state claims but this factor alone does not warrant a remand. *See, e.g.*, *Wilson v. PFS LLC*, No. 06 Civ. 1046, 2006 WL 3841517, at *6 (S.D.Cal. Nov. 2, 2006); *Chavez v. Suzuki*, No. 05 Civ. 1569, 2005 WL 3477848, at *2 (S.D.Cal. Nov. 30, 2005); *Pettis v. Brown Group Retail, Inc.*, 896 F.Supp. 1163 (N.D.Fla.1995).

**152.** *See supra* note 8 and accompanying text.

**153.** *See, e.g.*, *Mauro v. Southern New England Telecomms., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000) (affirming district court's exercise of supplemental jurisdiction over state law

claims after the federal claims were dismissed on summary judgment); *Nowak*, 81 F.3d at 1191–92 (affirming district court's exercise of supplemental jurisdiction over the related state causes of action where federal claim was dismissed on the eve of trial); *Purgess*, 33 F.3d at 138–39 (affirming district court's exercise of supplemental jurisdiction where the last federal claim was dismissed after all the evidence was submitted to the jury). Indeed, many courts have retained supplemental jurisdiction even where the jurisdiction-conferring claims have been dismissed at a relatively early stage of the litigation. *See, e.g.*, *New York Transp., Inc. v. Naples Transp., Inc.*, 116 F.Supp.2d 382, 390 (E.D.N.Y.2000) (retaining supplemental jurisdiction over state law claims after a Rule 12(b)(6) dismissal of the federal claims); *Ackerman v. National Property Analysts, Inc.*, 887 F.Supp. 494, 510 (S.D.N.Y.1992) (same). Here, of course, the federal TSCA claims have not been dismissed, which further weighs against declining to exercise supplemental jurisdiction over the state law claims.

ries, and evidence that have taken this Court over three years to untangle. Whether or not that was defendants' motive in making this motion need not be addressed, but the Court will certainly not exercise its discretion to bring about such a result.

## V. CONCLUSION

For the foregoing reasons, defendants' Motion to Remand the *Suffolk County* action is denied in its entirety. The Clerk of the Court is directed to close this Motion (document # 1455).

SO ORDERED.